cIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ADAM BARKER, individually and on behalf of similarly situated persons,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:22-cv-00342** |
| **ITL FOODS, LP d/b/a PIZZA HUT,** | **Collective Action Complaint** |
| **Defendant.** | **Jury Demanded** |

## PLAINTIFF'S MOTION FOR FLSA CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS

Plaintiff, Adam Barker, on on his own behalf and on behalf of those similarly situated (hereinafter "Plaintiff and the Putative Class Members"), files this Motion for FLSA Certification and Notice to Putative Class Members ("Motion") pursuant to 29 U.S.C. § 216(b). For the reasons set forth in Plaintiff's Motion and other evidence before this Court, Plaintiff respectfully requests that the Court enter an Order conditionally certifying a collective action for "All employees who worked for ITL Foods, LP as delivery drivers at any time between February 2, 2019 to present." Plaintiff further requests that this Court enter an order requiring Defendant to produce contact information for all Putative Class Members, and authorize the issuance of the Proposed Notice and Consent to Join Form, attached to the Memorandum as **Exhibits 1**, respectively, to all members of the putative class in the method and manner described herein. In support of Plaintiff's Motion, Plaintiff states as follows:

## SUMMARY OF THE ARGUMENT

In deciding whether to certify this collective action, the central question for the Court is "whether merits questions can be answered collectively." *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 442 (5th Cir. 2021). The answer to that question here is, emphatically, yes – they can.

In support of this Motion, Plaintiff has presented substantial evidence that Plaintiff and the Putative Class Members are similarly situated including written answers to discovery, deposition testimony of Defendant's own 30(b)(6) representative, and Defendant's own documents. The consistent testimony shows that Plaintiff and the Putative Class Members were all paid at or near the minimum wage; that Defendant had a uniform policy in which it failed to track delivery drivers' actual expenses; and that Defendant applied a uniform mileage reimbursement policy to all delivery drivers based on the same flawed methodology. Given Plaintiff's challenge is to Defendant's uniform reimbursement policy applied equally to class members, the question of whether Defendant's reimbursement policy violates the FLSA can easily be answered collectively, making this case suitable for class wide treatment.

Indeed, this case is far from a matter of first impression. Scores of cases involving pizza delivery driver reimbursement claims have been certified both under the Fair Labor Standards Act (29 U.S.C. § 216(b)) conditional certification standard as well as a Rule 23 type class action standard. As those courts did, this Court should GRANT Plaintiff's Motion for Conditional Certification.

## BACKGROUND AND PROCEDURAL SUMMARY

On February 2, 2022, Plaintiff filed an Original Collective Action Complaint pursuant to 29 U.S.C. § 216(b). [D.E. 1]. Since this lawsuit has been on file, the parties have conducted discovery tailored to whether this case should be certified as a collective action, including reciprocal written discovery, the deposition of Plaintiff, and the deposition of Defendant's Rule 30(b)(6) Corporate Representative. Accordingly, this Motion is ripe for review.

Defendant, ITL Foods, LP, is a Pizza Hut franchisee who operates nineteen (19) stores throughout Texas. *See* Def's Supp. and Am. Answers to Interrog. No. 2, attached as **Exhibit 2**. Plaintiff and the Putative Class Members are the approximately 644 current and former delivery drivers who worked for Defendant in Texas from February 2, 2019 to present. *See id.* at Answer to Interrog. No. 1.

When performing deliveries on Defendant's behalf, Plaintiff and the Putative Class Members are all paid a sub-minimum wage. *See* Excerpts of Dep. of Def's Rule 30(b)(6) Corp. Rep., Luis Veras,[1] at 64:21-24, attached as **Exhibit 3** (hereinafter "Veras Dep") ("Q: Now, for when drivers are driving for their direct wage, are there – they are paid on a tip credit type basis; is that accurate? A: That's correct"). As such, Defendant is required by the FLSA to fully reimburse its delivery drivers for all expenses so as to keep their effective wages at or above the minimum. *See* 29 C.F.R. § 531.35. Defendant

---

[1] Luis Veras was Defendant's Director of Operations and the individual responsible for determining the reimbursement rate Plaintiff and the Putative Class Members received. *See* Def's Supp. and Am. Answers to Interrog. No. 12.

admits that it did not keep records of Plaintiff and Putative Class Members' *actual* vehicle expenses. *See* Veras Dep. at 92:20 – 93:10. Accordingly, Defendant was required to reimburse Plaintiff and Putative Class Members at the IRS business mileage rate for all miles driven on behalf of Defendant. *See Zellagui v. MCD Pizza, Inc.*, 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 3, 2014) ("When minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate); *Parker v. Battle Creek Pizza*, No. 1:20-cv-277, D.E. 178 (W.D. Mich. Apr. 29, 2022); *Hatmaker v. PJ Ohio, Inc.*, 2019 WL 5725043, *6 (S.D. Ohio Nov. 5, 2019) ("*Hatmaker I*") ("Absent an employer who has tracked actual expenses, the IRS standard business mileage rate set forth in the Department's Field Operations Handbook properly applies when enforcing the minimum wage requirements of the FLSA."); *Orth v. J & J & J Pizza, Inc.*, 2020 WL 1446735 (D. Mass. March 25, 2020) (denying employer's motion to dismiss and holding that the IRS mileage rate may be used to calculate under-reimbursement damages); *Burton v. DRAS Partners, LLC,* 2019 WL 5550579 (N.D. Ill. Oct. 27, 2019) ("Based on the DOL Handbook, district courts and arbitrators repeatedly hold that pizza delivery drivers are owed the difference between the reimbursements provided and the IRS rate when the employer fails to keep records of their actual expenses."); and *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2018 WL 5800594, *4 (S.D. Ohio 2018) ("Because the vehicles owned by the delivery drivers are considered "tools of the trade," 29 C.F.R. § 531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, **there**

4

needed to be an adequate reimbursement rate, <u>using either the IRS mileage rate or</u> <u>actual reimbursement of cost</u>, in order to avoid a decrease in the minimum wage and overtime paid.") (emphasis added). Even if Defendant is able to convince this Court that they may pay a "reasonable rate" rather than the IRS rate, the IRS rate *is* a reasonable approximation of delivery drivers' actual expenses. *See Hatmaker I*, 2019 WL 5725043 at *5 ("The IRS Rate is the real cost of driving a vehicle"); *see also* https://exchange.aaa.com/automotive/driving-costs/ (within this literature, the American Automobile Association estimates that the operating cost of a vehicle between 2019 and 2022 averages between 61.88 cents to 63.7 cents per mile).

However, Defendant did not reimburse Plaintiff and Putative Class Members at the IRS rate. Instead, Defendant paid a per-delivery reimbursement rate that ranged from approximately $1.25 to $2.00 per delivery depending on the location delivery arwa.[2] *See* Veras Dep. at 73:2 – 74:1 (testifying that he used a benchmark of roughly $.30 per mile in setting the per-delivery reimbursement rate). Despite small variations in the reimbursement rate ultimately paid by store, in setting that reimbursement rate it is *undisputed* that Defendant applied the *same methodology* to all delivery drivers, and that this methodology resulted in a per-mile reimbursement rate that is below the IRS rate. *See id.* at 104:17-20 ("Q: And that – that methodology that you were just describing, you did that the same across each store? A: Correct. Yeah."); *see also* email from Mr. Veras to

Area Coach, Jen Rodriguez, ITL 187360, attached as **Exhibit 4** (instructing Ms. Rodriguez to increase the reimbursement rate at "all the North stores" to $1.25, which shows that Defendant applied its reimbursement policy across its stores without regard to individualized factors); Veras Dep. at 56:18-25 (testifying that all drivers at the store level received the same reimbursement rate whether they drove a Suburban or a Prius). Without question, the facts here show that Defendant utilized a common practice to set the reimbursement rate it paid its drivers, and did not utilize individual factors unique to each driver to set the reimbursement rate.

## **MEMORANDUM OF LAW**

### A.     *Swales* **Requires Courts to Consider Whether Merits Questions Can Be Answered Collectively Without Endorsing the Merits**

In *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit rejected the *Lusardi* two-step approach to FLSA collective certification, and instead, held that district courts "must rigorously scrutinize the realm of 'similarly situated' workers" from the outset of the case while considering "(1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court 'may facilitate notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* at

---

[2] One store paid a standard per-mile rate rather than a per-delivery rate because when Defendant inherited the store the previous franchisee was already paying a per-mile rate so it was kept the same. *See* Veras Dep. at 72:6-15. However, like the other stores, the per-mile rate was generally in the 30 to 40 cent range and well below the IRS rate. *See* Veras Dep. at 73:2 – 74:1.

434. Through this holding, the court created a single "collective treatment" determination, faithful to the original language of § 216, requiring only that workers be "similarly situated" and cautious of stirring up litigation. *Id.* at 434.

*Swales* directs courts to "ascertain[] the contours of the action at the outset," *id.* at 435, and "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441. "The bottom line is that the district court has broad, litigation-management discretion [...] that [...] is cabined by the FLSA's 'similarly situated' requirement and the Supreme Court's decision in *Hoffmann La-Roche*." *Id.* at 443

The central question for the Court is "whether merits questions can be answered collectively." *Id.* at 442. In this regard, *the Court's goal is unchanged*. Courts have long recognized "the relevant inquiry is whether there is a demonstrated similarity among the individual situations some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice, so that hearing the cases together furthers the purposes of Section 16, is fair to both parties, and does not result in an unmanageable trial." *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014) (cleaned up, citing *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992)). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018); *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 521 (2d Cir. 2020) (analyzing whether plaintiffs "share one or more similar

questions of law or fact material to the disposition of their FLSA claims," and finding if they are "similar in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may to that extent facilitate the collective litigation of collective plaintiffs' claims").

To that end, *Swales* further holds that when "plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job . . . a district court will not likely need mountains of discovery to decide whether notice is appropriate." *Id.* at 441-42. In these instances, "notice might be justified when the pleadings and only preliminary discovery shows sufficient similarity between the plaintiffs' employment situation." *Id.* at 441. That's certainly true here.

Here, Plaintiff's proposed class involves just *one* category of employees – delivery drivers. All delivery drivers share the same general job duties – to deliver pizzas to Defendant's customers. And the allegations revolve around the same aspect of that job – Defendant's mileage reimbursement policy. Accordingly, under *Swales*, this Court does not need a "mountain of evidence" to decide whether notice if appropriate.

**B.**    **Plaintiff and the Putative Class Members are Victims of a Common Policy**

The threshold inquiry for collective treatment is whether the proposed class is "similarly situated." *See* 29 U.S.C. § 216(b). Plaintiffs are "similarly situated" if they raise claims capable of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" misconduct. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Here, the proposed class members need to show they were all subject to a common unlawful practice giving rise to their claims, *which they were*.

The evidence shows that *all* delivery drivers were paid a sub-minimum wage for hours worked while performing deliveries for Defendant, Veras Dep. at 64:21-24; that Defendant did not track actual vehicle expenses for *any* delivery driver, *see id.* at 92:20 – 93:10; and, instead, Defendant applied a uniform reimbursement policy across all delivery drivers based on the *same methodology* of keeping delivery driver reimbursements within the $.30 per mile range, *see id.* at 56:18-25, 73:2 – 74:1, 104:17-20. Defendant cannot point to any evidence where it treated class members uniquely when it comes to the reimbursement paid to them. Given all Putative Class Members' claims are brought under the same law and legal framework and are undeniably common, their claims against Defendant can be tried collectively.

**C.**    **This Court Should Follow the Numerous Other Courts Certifying Pizza Delivery Driver Under-reimbursement Actions**

Numerous courts, within both an FLSA context *and* a more rigorous Rule 23 context, have certified similar delivery driver actions based on illegal reimbursement models. The cases certifying actions under the FLSA are as follows: *Branning v. Romeo's Pizza, Inc.*, 2022 WL 986090, at *7 (N.D. Ohio Mar. 29, 2022); *Rodriguez v. Cutchall*, 2021 WL 5911322, at *2 (D. Neb. Nov. 16, 2021), *report and recommendation adopted*, 2021 WL 5907935 (D. Neb. Dec. 14, 2021); *Scott v. Freeland Enterprises, Inc.*, 2022 WL 4298566, at *1 (N.D. Ind. Sept. 19, 2022); *Perrin v. Papa John's Int'l, Inc.*, 2011 U.S. Dist. LEXIS 104059, *11-18 (E.D. Mo. Sept. 14, 2011) ("*Perrin II*"); *Benton v. Deli Mgmt., Inc.*, 2017 U.S. Dist. LEXIS 211358, *1-29 (N.D. Ga. Dec. 18, 2017); *Young v. Rolling in the Dough, Inc.*, 2018 U.S. Dist. LEXIS 38533, *6- 9 (N.D. Ill. Mar. 8, 2018); *Meetz v. Wis. Hospitality Grp., LLC,*

2017 U.S. Dist. LEXIS 138380, *6-16 (E.D. Wis. Aug. 29, 2017); *Beebe v. V&J National Enterprises, LLC*, No. 17-6075, ECF No. 41 (W.D.N.Y. June 15, 2017); *Redus v. CSPH, Inc.*, 2017 U.S. Dist. LEXIS 74906, *1-10 (N.D. Tex. May 17, 2017); *Sullivan v. PJ United Inc.*, 2017 U.S. Dist. LEXIS 40133, *1-10 (N.D. Ala. Mar. 13, 2017); *Drollinger v. Network Global Logistics, Inc.*, No. 16-304, ECF No. 76 (D. Colo. Jan. 18, 2017); *Tegtmeier v. PJ Iowa, L.C.*, 2016 U.S. Dist. LEXIS 130190, *3-21 (S.D. Iowa Sept. 21, 2016); *Bellaspica v. PJPA, LLC*, 3 F. Supp. 3d 257, 260 (E.D. Pa. 2014); *Smith v. Pizza Hut, Inc.*, 2012 U.S. Dist. LEXIS 56987, *14-18 (D. Colo. Apr. 21, 2012) ("*Smith II*"); *Darrow v. WKRP Mgmt., LLC*, 2012 U.S. Dist. LEXIS 24997, *7-17 (D. Colo. Feb. 28, 2012) ("*Darrow II*"); *Wass v. NPC Int'l.*, 2011 U.S. Dist. LEXIS 32761, *10-24 D. Kan. Mar. 28, 2011) ("*Wass II*"); and *Bass v. PJCOMN Acq. Corp.*, 2010 U.S. Dist. LEXIS 144305, *4-7 (D. Colo. Sept. 15, 2010) ("*Bass I*").

In regard to the more-stringent Rule 23 standard for state-law claims, courts have certified the following pizza delivery driver cases: *Edwards v. PJ Ops Idaho, LLC*, 2022 WL 2065043, at *8 (D. Idaho June 7, 2022); *Mayer v. Perfect Pizza Pie, Inc.*, No. 2017-CA-000537 (Fla. Cir. Ct. Aug. 19, 2021); *Zampella v. Aim High Pizza, LLC*, No. 20-330-CA-DS (Fla. Cir. Ct. Dec. 9, 2021); *Perrin v. Papa John's Int'l., Inc.*, 2013 U.S. Dist. LEXIS 181749, *4-8 & 16-26 (E.D. Mo. Dec. 31, 2013) ("*Perrin III*"); *McFarlin v. The Word Enters., LLC*, 2017 U.S. Dist. LEXIS 164968, *1-13 (E.D. Mich. Oct. 5, 2017); *Bass v. PJ COMN Acq. Corp.*, 2011 U.S. Dist. LEXIS 58352, *1-12 (D. Colo. Jun. 1, 2011) ("*Bass II*"); *Oregal v. PacPizza*, No. C12-01454 (Sup. Ct. of Contra Costa Cnty. May 8, 2014) (previously submitted as ECF No. 318-1); *Behaein v. Pizza Hut*, No. BC541415 (Sup. Ct. of L.A. Cnty. Jul. 15, 2015) (recognizing that common class-wide proof entails estimated vehicle costs, rather than

requiring each delivery driver to prove his or her own actual vehicle costs); and *Villalpando v. Exel Direct Inc.*, 2016 WL 1598663 (N.D. Cal. Apr. 21, 2016) (recognizing that showing of reasonable reimbursement rate constitutes proof common to the entire class).

Plaintiff expects that Defendant will rely on an outlier case, *Eshelman v. MPFP, LLC*, 2022 WL 2655821 (S.D. Tex. June 22, 2022), *report and recommendation adopted*, 2022 WL 2652021 (S.D. Tex. July 8, 2022) to support denying this Motion. However, Judge Bryan's concerns in *Eshelman* can be easily quelled here. Judge Bryan's principal concern was that the costs of making deliveries is different for every driver depending on insurance costs, the car driven, etc. *Id.* at *3. However, differences between the *actual* costs of deliveries per driver is immaterial to this Court's analysis ultimately. Defendant here did *not* track employees' *actual* vehicle expenses but instead relied on an approximation of the employees' reasonable expenses (roughly $.30 per mile) without regard to differences in employees' insurance costs, vehicle driven, etc. *See* Veras Dep. at 56:18-25 ("Q: At the store level, each driver got the same reimbursement rate? A: That is correct. That is correct. Q: No matter if they drove a Suburban or a Prius? A: That is correct. It was a store level reimbursement rate, if that's the question that you were asking."). Accordingly, the appropriate measure of damages is Plaintiff and Putative Class Members' *approximate reasonable expenses* (i.e. the IRS rate), not their actual expenses. As explained above, case law requires the IRS rate be paid where actual expenses were not tracked. *See supra*, pp. 4-5. To now require an individual analysis of employees' actual vehicle expenses when Defendant itself did not even do so would

thwart the remedial purposes of the FLSA and create an "impossible hurdle" for employees. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).[3] Therefore, differences in Plaintiff and Putative Class Members' *actual* vehicle expenses is immaterial.

By way of illustration, at the damages phase of this case the damages will be calculated as follows:

[Total number of miles driven by class member x IRS rate]

- [total reimbursement paid by Defendant]

= unpaid minimum wages owed

---

[3] In the context of unrecorded work time, when it comes to a complex issue like vehicle related expenses—it would be unrealistic to require an employee to be able to testify about an issue like the depreciation of his or her vehicle. Such a standard would create the "impossible hurdle" that *Mt. Clemens* warns about. After all, experts spend substantial time and effort calculating the "true cost of ownership" and expenses-per-mile. *See* https://exchange.aaa.com/automotive/driving-costs/. Similarly, it would amount to an improper waiver of FLSA rights if the standard required employees to produce "information the drivers likely no longer have and had no reason or duty to keep." *Hatmaker v. PJ Ohio, LLC*, 2020 WL 1129325, at *4 (S.D. Ohio Mar. 6, 2020) ("*Hatmaker II*"). Recordkeeping is the employer's responsibility under the FLSA; lack of diligence on the employer's part does not waive a right for or impose a duty upon the employee. Hence, why courts frequently rely on the IRS as the appropriate measure of damages when employers failed to keep accurate records of employees' *actual* vehicle expenses. First, by relying on the IRS Rate, both the drivers and the companies know—before litigation ever commences — whether the employer is properly reimbursing the drivers. Second, it simplifies any discovery — if pizza companies did not track and pay the drivers' actual expenses, then the company's compliance is measured against the IRS Rate. *Hatmaker II*, 2020 WL 1129325, at *4. If the pizza companies did track and pay actual expenses, then they can produce records and the onus is on the driver to dispute those records. This is exactly how the Supreme Court held that FLSA cases should proceed. *Mt. Clemens Pottery Co.*, 328 U.S. at 687.

The total number of miles driven can be derived from Defendant's own records[4] which shows how many trips (dispatches) each driver performed during their employment with Defendant multiplied by the average number of miles roundtrip (which can be derived from Defendant's trade maps). *See e.g.*, example of Plaintiff's mileage records attached as **Exhibit 5** and the trade map for Plaintiff's store attached as **Exhibit 6**. This *same* mathematical calculation can be performed for *each and every driver* within the putative class without regard to individualized factors.

Accordingly, *Eshelman* does not compel denying this Motion.  Defendant admits it used the same methodology for each store and driver.  This undisputed evidence supports granting certification like the many courts across the country in similar pizza delivery driver cases have.

**D.**      **The Court Should Authorize the Proposed Notice**

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann–La Roche Inc.*, 493 U.S. at 170. Court-authorized notice prevents "misleading communications" and assures the dissemination of accurate information. *Id.* at 172.

---

[4] Defendant uses the same system (the "HutLink" system) to track delivery dispatches and deliveries made. *See* Def's Supp. and Am. Answers to Interrog. Nos. 7, 9-10; Veras Dep. at 82:3-11.

1. **Plaintiffs' Proposed Notice is Timely, Accurate, and Informative**

Plaintiff requests that the Court approve the proposed Notice and Consent to Join Form attached at **Exhibit 1**. Plaintiff's proposed Court-approved notice to the Putative Class Members is "timely, accurate, and informative," as required. *Id.* at 172. In a neutral manner, the Notice informs the Putative Class Members of their right to opt-in to this litigation, advises that this Court has yet to decide the merits of the dispute, and further advises that Defendant cannot retaliate against them for asserting their rights under the FLSA.

2. **Plaintiff's Proposed Notice and Consent Forms Should be Sent Via First Class Mail, E-Mail, and Text Message**

Plaintiff proposes distributing the Notice and Consent forms via First Class Mail, e-mail, and text message to all putative class members. "Courts in this district, including this court, regularly allow notice by both mail and e-mail because "e-mail is not the wave of the future; e-mail is the wave of the last decade and a half." *Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 489 (S.D. Tex. 2020) (quoting *Rodriguez v. Stage 3 Separation, LLC*, 2015 U.S. Dist. LEXIS 188200, at *6 n.1 (W.D. Tex. 2015) (quotation cleaned up)). Additionally, recognizing that our e-mail inboxes are now "inundated with hundreds or thousands of messages" and that it is not uncommon for individuals to "create a new e-mail account every couple of years, just to wipe the slate clean and rid themselves of the dread associated with sifting through hundreds of e-mails," courts have authorized text message notice in addition to mail and e-mail notice

because "potential plaintiffs are more likely to receive notice of the collective action if a court allows text-message notice." *Id.* at 490.

Plaintiff's counsel will oversee the dissemination of such Court-approved notice and pay the up-front charges. Plaintiff's counsel also requests that it be permitted to retain a third-party administration company to assist in the notice process if Plaintiff's counsel deems it necessary and appropriate. All Putative Class Members interested in joining this lawsuit would be required to return their respective consent form to Plaintiff's counsel for filing with this Court within sixty (60) days[5] of the initial mailing of the Notice and Consent forms.

Plaintiff further requests that Putative Class Members have the option to execute their consent forms online through an electronic signature service. This service allows Putative Class Members to sign their consent forms electronically by clicking on a link in an encrypted e-mail designated only for that user, which in turn allows the user to review the document, indicate the user read and understood the consent form, and type additional information. Users are instantaneously provided with a PDF copy of the form, and a copy is accessible to Plaintiff's counsel who will, in turn, file the same with the Court. Importantly, this would merely be an additional option for signing the consent form.

---

[5] In the Fifth Circuit, sixty (60) days is the "default" notice period. *See Santinac v. Worldwide Lab. Support of Illinois, Inc.*, 107 F. Supp. 3d 610, 619 (S.D. Miss. 2015) (citing *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015) (collecting cases)).

Courts in this circuit have previously authorized the use of electronic signatures in FLSA collective action cases noting that (1) the FLSA does not contain a signature requirement (only that consent be in writing), *Wingo v. Martin Transp., Inc.*, 2018 WL 6334312, at *13 (E.D. Tex. Dec. 5, 2018) (citing *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015)); (2) the Electronic Signatures in Global and National Commerce Act ("E-Sign Act") of 2000 permits electronic signatures "with respect to any transaction in or affecting interstate or foreign commerce," *Wingo*, 2018 WL 6334312, at *13 (citing 15 U.S.C. § 7001(a)(1); *see also Dyson*, 308 F.R.D. at 517); and (3) "we live in a time when all manner of commercial transactions are routinely cemented by electronic submission," *Wingo*, 2018 WL 6334312, at *13 (citing *Dyson*, 308 F.R.D. at 517 (collecting cases)). Accordingly, this Court should authorize the use of electronic signatures here.

### 3.    The Notice and Consent Forms Should be Posted at Defendant's Stores

Plaintiff also requests that the Notice and Consent forms be posted in plain view at each of Defendant's stores. Courts in the Fifth Circuit have required that employers post the notice at a conspicuous location in their facilities. *See Mendoza v. AFO Boss, LLC*, 402 F. Supp. 3d 355, 361 (W.D. Tex. 2019) (ordering that within three (3) days of posting the notices at their places of work, defendant shall certify in writing that the notices have been posted and the locations of the postings); *Hobbs v. Cable Mktg. & Installation of Louisiana, Inc.*, 290 F. Supp. 3d 589, 598 (E.D. La. 2018); *Kidwell v. Ruby IV, LLC*, 2019 WL 219850, at *8 (E.D. La. Jan. 16, 2019).

### 4.    Production of the Last Four Digits of Social Security Numbers

Plaintiffs also proposes that Defendant provide Plaintiff's counsel the last four digits of the social security number of any Putative Class Member for whom the mailed notice is returned as undeliverable by the United States Postal Service. The last four digits are needed to obtain current contact information for the Putative Class Members and are routinely produced by an employer for purposes of the notice process. *See In re Wells Fargo Wage & Hour Emp't Practices Litig. (No. III)*, 2013 WL 2180014, at *3 (S.D. Tex. May 17, 2013) (ordering defendant to produce social security numbers of putative class members in which the claims administrator was unable to locate alternate addresses by less intrusive means). Again, the type of information would *only* be produced for *just* those putative class members whose notice forms are returned as undeliverable in order to attempt to track down an accurate address for notice for the driver.

### 5.    Reminder Notices Should be Sent to Class Members

In addition to the initial notice by regular mail and e-mail, Plaintiff requests permission to send a follow-up reminder notice via regular mail and e-mail thirty (30) days after the initial notice is sent to those who have not opted into the case. Sending a reminder notice with a consent form helps to further the FLSA's broad remedial purposes by ensuring that all persons who are interested in joining the collective action do so within the prescribed time-period. *See Wingo*, 2018 WL 6334312, *11 (finding that a reminder notice is a reasonable way to ensure that potential class members receive notice and, if they choose to do so, file a timely opt-in form); *Page v. Crescent Directional Drilling, L.P.*, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015) (same); *Dickensheets v.*

*Arc Marine, LLC*, 440 F. Supp. 3d 670, 673 (S.D. Tex. 2020) (same). Likewise, here, the reminder notice further works to notify the Putative Class Members about their right to opt-in to the lawsuit, and is well within this Court's discretionary authority. *See id.*

### 6. Courts Routinely Require the Production of Personal Contact Information for the Notice Process

Plaintiff requests that the Court order Defendant to provide the names, last known mailing addresses, all known e-mail addresses, and phone numbers, and dates of employment for all Putative Class Members. Production of a mailing list and contact information for the Putative Class Members is a necessary (and routine) component of the notice process in collective actions. *See Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 525 (N.D. Tex. 2014). All of the requested information is necessary to allow Plaintiffs sufficient information to confirm current addresses and/or locate those Putative Class Members who may have moved. Moreover, the production of all known e-mail addresses and telephone numbers is particularly important because (as noted above) such contact information typically does not change when a person moves, and e-mail and text-message notice is an efficient and convenient form of communication.

<u>CONCLUSION</u>

Based on the pleadings, briefing, and supporting documentary evidence, Plaintiff has affirmatively demonstrated that they and the Putative Class Members are similarly situated and Court-approved notice should be sent to all current and former delivery drivers who worked for Defendant from February 2, 2019 to present. To

facilitate the purpose of the collective action provisions, Plaintiff respectfully requests that the Court grant this Motion and grant the following relief to Plaintiff:

(1)     Certify this case as a collective action for purposes of notice and discovery;

(2)     Order Defendant to produce to Plaintiff's counsel within fourteen (14) days of the granting of this Motion, in a computer-readable format, the contact information (including the names, addresses, telephone numbers, e-mail addresses, and dates of employment with corresponding locations of employment) for each Putative Class Member;

(3)     Approve the form and content of Plaintiff's proposed judicial notice;

(4)     Order that judicially-approved notice be sent to all Putative Class Members via First Class Mail, e-mail, and text-message, and allow the hiring of a third-party administration company, for use at Plaintiff's discretion;

(5)     Authorize the Putative Class Members to execute their consent forms electronically;

(6)     Authorize a 60-day notice period for the Putative Class Members to join the case;

(7)     Authorize a 30-day reminder notice;

(8)     Require the production of the last four digits of any Putative Class Members' social security number whose notice comes back as undeliverable; and

(9)     For any such other relief as this Court deems just and proper.

### **LOCAL RULE 7.1(D) CERTIFICATION**

Undersigned Counsel hereby certifies that he conferred with counsel for Defendant regarding the relief requested herein. Defendant's counsel stated that Defendant objects to Plaintiff's motion.

Dated this 3rd day of February, 2023.

**/s/ C. RYAN MORGAN**
C. Ryan Morgan, Esq. *(Pro Hac Vice)*
FBN 0015527
Jolie N. Pavlos, Esq. *(Pro Hac Vice)*
FBN 0125571
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Email: RMorgan@forthepeople.com
          JPavlos@forthepeople.com

**/s/ ANDREW DUNLAP**
Andrew Dunlap, Esq.
Texas Bar No. 24078444
JOSEPHSON DUN LAP, LLP
11 Greenway Plaza
Suite 3050
Houston, TX 77046
Telephone: (713) 352-1100
E-mail: adunlap@mybackwages.com

*Local Counsel*

*Counsel for the Plaintiff(s)*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 3, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

<u>/s/ C. RYAN MORGAN</u>
C. Ryan Morgan, Esq.