United States District Court
Southern District of Texas
**ENTERED**
July 24, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Adam Barker, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-22-342 |
| | § | |
| ITL Foods, LP, d/b/a Pizza Hut, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court is Plaintiff Adam Barker's motion to certify a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. ECF No. 30. The motion is before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). The undersigned recommends that the motion be **GRANTED IN PART**.

### 1. Background

Plaintiff, a former delivery driver for Defendant, a Pizza Hut franchisee, filed this lawsuit on his own behalf and on behalf of all others similarly situated. ECF No. 1. Plaintiff alleged that Defendant failed to pay its delivery drivers the federal minimum wage. *Id.*

The facts are not in dispute. Since February 2, 2019, Defendant has employed approximately 644 delivery drivers at its nineteen Pizza Hut franchised restaurants (stores) in the Dallas area. ECF No. 30-2 at 4; Luis Veras's Dep. at 24, 29, ECF No. 35-1; *see also* ECF No. 35 at 1. Plaintiff worked for Defendant as a crew member making pizzas beginning in November 2018. Pl.'s Dep. at 19–20, ECF No. 35-2. He left that job to work for another pizza restaurant for a few months. *Id.* at 20. Plaintiff returned to work for Defendant as a shift manager and as a

delivery driver in April 2019. *Id.* at 22. Plaintiff and the other drivers used their own vehicles to make deliveries. *See* Pl.'s Dep. at 29, 41, 45, 70, 86. Plaintiff quit working for Defendant in April 2021. *Id.* at 27.

During the relevant period, Defendant paid its delivery drivers an hourly wage of approximately $4.50 and a per-delivery reimbursement (trip charge) for the driver's personal vehicle expenses. Veras's Dep. at 50; *see also* Pl.'s Dep. at 22–23, 39, 43. When Plaintiff was working as a delivery driver, the trip charge at his store was between $1.25 and $1.75 per delivery.[1] Pl.'s Dep. at 25, 44. The delivery drivers also received customer tips. *Id.* at 25; *see also* Veras's Dep. at 64 (stating that the delivery drivers were "paid on a tip credit type basis"). At the end of each shift, Defendant reimbursed the driver an amount totaling the number of deliveries made multiplied by that store's reimbursement rate and cashed out the driver's charged tips. Veras's Dep. at 45, 50–51, 67. This practice was consistent for delivery drivers across all but one of Defendant's stores, which instead tracked the drivers' delivery mileage and multiplied by approximately $.30.[2] *Id.* at 51, 71–74, 81–82, 87.

Luis Veras, formerly Defendant's director of operations, was responsible for determining the rate of the drivers' reimbursement for their vehicle expenses during the relevant

---

[1] All of Defendant's stores billed customers a delivery charge of $3.49. Veras's Dep. at 97–98.

[2] According to Veras, Defendant "inherited" usage of the per-mile rate at the one store and did not want to create any disruption in its operation by changing to a per-delivery rate. Veras's Dep. at 74. Veras also testified that, based on his own calculations, the per-mile rate amounted to a lesser reimbursement that the per-delivery rate because of the relatively small trade areas for most of Defendant's stores. *Id.* For that reason, Defendant discussed but rejected changing the other eighteen stores to a per-mile rate. *Id.*

period. ECF No. 30-2 at 7; Veras's Dep. at 9, 32–33, 80. Based on his evaluation of multiple factors, Veras arrived at a per-mile reimbursement rate of about $.30 for vehicle expenses, which he used for the per-mile reimbursement formula and in calculating the trip charge. *See, e.g., id.* at 58–59 (discussing factors he considered in determining a trip charge); 72–73 (discussing the use of a $.30 per-mile rate in the per-mile formula); 77–79 (explaining how he calculated a "fair" per-mile rate); 103–04 (discussing the use of a $.30 per-mile rate in calculating the trip charge). The factors considered included gas prices, cost of a vehicle, cost of insurance, and depreciation. *See generally id.* at 58–61, 77–81, 103–04.

In calculating the trip-charge reimbursement, Veras multiplied the average miles per delivery based on the trade area maps by $.30 and adjusted that amount to account for other factors such as market competition and driver recruitment or retention. *See* Veras's Dep. at 58–61, 77–81. Although Veras tried to set a consistent trip charge across all stores, certain variables accounted for the differences in amount. *See id.* at 59–60, 103. For example, he raised the rate in two stores with larger trade areas because the drivers' delivery round trips were longer than the average mileage used in his original calculation. *Id.* at 59, 103. Veras also raised the trip charge at two or three stores where tips were typically lower than others. *Id.* at 60.

The trip charge was not tailored to a particular driver's actual vehicle expenses; that is, the rate was the same for all delivery drivers at any given store regardless of differences in actual costs. Veras's Dep. at 56, ECF No. 35-1. Veras confirmed that Defendant did not track actual expenses at any store. *Id.* at 92–93; *see also* Pl.'s Dep. at 86. Finally, Veras was aware of the Internal Revenue Service's business mileage rate (IRS rate) used

for per-mile reimbursement of vehicle expenses for business use of personal vehicles, but he viewed its purpose as different from Defendant's reimbursement of delivery drivers' vehicle expenses and thus only considered it as a point of reference. *See* Veras's Dep. at 93–95. According to Plaintiff, the IRS rate during the relevant period "ranged between $.56 and $.585 per mile." ECF No. 1 at 3.

Plaintiff filed this FLSA collective action on February 2, 2022. *See* ECF No. 1. The parties unsuccessfully attempted mediation in the fall of 2022. *See* ECF No. 26. The parties thereafter engaged in discovery related to certification of the collective. ECF No. 28. On February 3, 2023, Plaintiff filed the motion to certify. ECF No. 30. Since Plaintiff filed the motion, one other individual has filed a notice of consent to join the collective. *See* ECF No. 34.

## 2. FLSA Law and Collective Action Standard

The FLSA requires covered employers to pay employees a general minimum hourly wage of at least $7.25. 29 U.S.C. § 206(a). An exception to that requirement applies to customarily tipped employees, whom an employer may pay a minimum hourly wage that is less than $7.25 but at least $2.13 on the condition that the employee's tips amount to enough to match or exceed the general minimum hourly wage. 29 U.S.C. § 203 (m)(2); 29 C.F.R. § 531.50; *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015). An employer who requires an employee to provide his own tools specifically required for the performance of his job, such as an automobile for making deliveries, violates the FLSA if the cost of the tools "cuts into the minimum or overtime wages required to be paid[.]" 29 C.F.R. § 531.35.

Employees can sue employers for violating the FLSA both on behalf of themselves alone and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b); *see also Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, Civil Action No. 4:21-CV-00124, 2022 WL 2119542, at *3 (E.D. Tex. June 13, 2022). These "similarly situated" individuals have the option to join the collective action. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915–16 (5th Cir. 2008).

The FLSA does not mention, much less describe, a certification process. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021). In *Swales,* the Fifth Circuit rejected the two-step certification rubric first articulated in *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987). *Swales*, 985 F.3d at 433–34, 436–37. In its stead, the court adopted "a definitive legal standard" with the intention of "providing a workable, gatekeeping framework for assessing, at the outset of litigation, *before* notice is sent to potential opt-ins, whether putative plaintiffs are similarly situated—not abstractly but actually." *Swales*, 985 F.3d at 433 (emphasis in original).

The FLSA does not define "similarly situated." *See* 29 U.S.C. § 216(b); *Swales*, 985 F.3d at 433–35. *Swales* instructs district courts to identify the "facts and legal considerations" that are material to making the "similarly situated" determination for the proposed group of employees in each case. *Id.* at 441. The court should certify if it finds "a 'factual nexus' that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unmanageable trial of individualized inquiries." *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, CAUSE NO. 3:20-CV-113-GHD-RP, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021) (citing *Swales*, 985 F.3d at 443). "Evidence of a similar job

5

description coupled with allegations revolving around the same aspect of the job is sufficient to find putative class members similarly situated." *Garcia-Alvarez*, 2022 WL 2119542, at *4 (citing *Swales*, 985 F.3d at 441); *see also Collins v. Pel-State Bulk Plant, LLC*, No. 20-cv-83, 2021 WL 5234968, at *3 (W.D. Tex. Sept. 29, 2021) (basing certification on same job titles, same job duties, same expectations, and same method of compensation). Conversely, "if certification would require the court to evaluate, on an individual basis, whether and to what extent the proposed class members' rights were violated[,]" the collective should not be certified. *Marquis v. Sadeghian*, Civil No. 4:19-cv-626-RWS-KPJ, 2021 WL 6621686, at *3 (E.D. Tex. Dec. 30, 2021) (basing denial of certification on lack of evidence establishing that the collective members had the same job duties and were subject to the same pay policy).

For the court's part, the "similarly situated" assessment may require early consideration of "merits issues when considering the scope of a collective" in order to avoid "send[ing] notice to employees who are not potential plaintiffs." *Swales*, 985 F.3d at 442. The question is "whether merits questions can be answered collectively," which "has nothing to do with endorsing the merits." *Id.* As long as the district court closely scrutinizes whether the employees are "similarly situated," the court "has broad, litigation-management discretion" to certify, to deny certification, or to order more discovery. *Id.* at 443.

6

### 3. Analysis

Plaintiff seeks the certification of a collective consisting of:

> "All employees who worked for ITL Foods, LP[,] as
> delivery drivers at any time between February 2,
> 2019[,] to present."

ECF No. 30 at 1. Plaintiff seeks certification for the claim that
Defendant's "uniform mileage reimbursement policy" was based
on a "flawed methodology" resulting in underpayment of the
required minimum wage. ECF No. 30 at 2. The ultimate merits
question here is whether Defendant's reimbursement rate was so
low that it cut into the drivers' hourly wage to the extent that the
wage dropped below the tip-credit minimum of $2.13. *Cf. Lopez v.
Fun Eats & Drinks, LLC*, No. 3:18-cv-1091-X, 2021 WL 3502361,
at *6 (N.D. Tex. July 16, 2021) (citing 29 U.S.C. § 203(m)(2)(B)
("Since tipped employees must be allowed to keep all their tips . .
. any deductions by the employer must be made from the direct
wage paid."). If the drivers were not fully reimbursed for vehicle
expenses, and, as a result, the drivers' overall pay rate was less
than the hourly minimum wage, Defendant violated the FLSA.
*See* 29 C.F.R. § 531.35.

Plaintiff argues that a per-mile reimbursement rate of
approximately $.30 is too low as a matter of law and resulted in
Defendant's failure to "fully reimburse its delivery drivers for all
expenses so as to keep their effective wages at or above the
minimum." ECF No. 30 at 3. Plaintiff bases his argument on a
line of federal district court cases across the nation that require
the application of the IRS rate for reimbursement of vehicle
expenses when the employer does not track actual vehicle
expenses. *See* ECF No. 30 at 4–5; ECF No. 40 at 7–8 (same).
Defendant counters with an opposing line of cases that found the

IRS rate was not the only choice in calculating a reasonable reimbursement rate. *See* ECF No. 35 at 14–16.

The regulations require that wages be "paid finally and unconditionally or 'free and clear.' 29 C.F.R. § 531.35. "[W]here the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee[,]" the "free and clear" requirement is not met. Here, the cost of the delivery drivers' use of their own vehicles to deliver pizzas must be reimbursed to comply with the regulation. Failure to do so, in whole or in part, is a violation of the FLSA in any workweek that the vehicle expenses "cut[] into the minimum or overtime wages required to be paid." 29 C.F.R. § 531.35. In connection with any employee's use of his own vehicle or other tools for the benefit of the employer, the regulation refers to 29 C.F.R. § 531.32, which refers to 29 C.F.R. § 778.217. Section 778.217(a), which addresses reimbursement in the context of calculating overtime pay rates, explains that an employer's reimbursement of an employee for expenses the employee incurred on his employer's behalf should "reasonably approximate[] the expense incurred." The regulation states that either "the actual or reasonably approximate amount expended by an employee, who is traveling 'over the road' on his employer's business," is sufficient. 29 C.F.R. § 778.217(b); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Aug. 31, 2020) (nonbinding agency opinion).

Thus, the applicable regulations provide an employer with two choices: (1) track and reimburse actual expenses; or (2) reimburse a reasonable approximation of the actual expenses. Using the IRS rate is one way of reasonably approximating the amount expended. *See Hatmaker v. PJ Ohio, LLC*, Case No. 3:17-cv-146, 2020 WL 1129325, at *4 (S.D. Ohio Mar. 6, 2020)

("Defendants may measure their minimum wage compliance against the IRS mileage rate."). Some courts have held that doing so is presumptively reasonable. *See, e.g., Burton v. DRAS Partners, LLC*, Case No. 2019-CV-02949, 2019 WL 5550579, at *2–4 (N.D. Ill. Oct. 27, 2019) (citing cases that held the IRS rate applies "when the employer fails to keep records of their actual expenses").

Here, Defendant did not choose to track actual expenses. Defendant chose to use an approximation of the actual expenses. The merits question in this case will be in two parts. Did Defendant use a reasonable approximation of actual expenses? If so, there can be no FLSA violation because the employees were not underpaid. On the other hand, if Plaintiff can show that a higher per mile rate should have been used, then the question will be whether: (the amount paid per hour during driving time) minus (the difference between the per mile reimbursement that should have been paid and the per mile reimbursement that actually was paid) times (miles driven) is less than ($2.13/hour). These questions can be answered on a class-wide basis without regard to any employee's actual expenses.

The notice stage is not when the court should consider whether Plaintiff can prove an FLSA violation. *See Garcia-Alvarez*, 2022 WL 2119542, at *11 (quoting *Collins*, 2021 WL 5234968, at *4) ("Indeed, 'the notice stage is not the equivalent of the dispositive motions stage and thus is not the proper time to adjudicate the lawfulness of Defendants' policy.'"). Rather, the court need only determine at this point if the merits can be resolved collectively. *Garcia-Alvarez*, 2022 WL 2119542, at *11 (quoting *Swales*, 985 F.3d at 442). Thus, whether Defendant's formula was a reasonable approximation is an issue that must be resolved later.

Plaintiff's proposed collective covers a group of employees with the same job title and description—delivery drivers who delivered pizzas in their personal vehicles—who are complaining about the same aspect of the job—underpayment of reimbursement for vehicle expenses. *Cf. Swales*, 985 F.3d at 441–42 (stating that notice might be justified when "the plaintiffs all have the same job description[] and the allegations revolve around the same aspect of that job"); *see also Garcia-Alvarez*, 2022 WL 2119542, at *4 (citing *Swales*, 985 F.3d at 441).

*Swales* does not require that all drivers be identical. In *Swales*, the Fifth Circuit found that the district court needed to consider the threshold question whether the economic realities test, "which asks how much control the employer had over the independent contractor[,]" could be applied on a collective basis. 985 F.3d at 442. The Fifth Circuit noted many differences among the potential collective in that case, including the lengths of the contracts, the compensation arrangements, the amount of control the drivers had over profitability, the requirements for fueling and servicing their trucks, and the options for leasing their trucks. *Id.* The court noted that these differences were relevant to both determining whether the collective was too diverse and later resolving the merits of the action. *Id.* at 442–43. The court did not hold that the prospective collective was too diverse in that case but, rather, instructed district courts to consider all available evidence at the notice stage even if it also applied to the merits. *See id.* at 443. The court held that, as long as the district court considered all available evidence, it had discretion to decide whether the proposed collective was too diverse to be similarly situated and to proceed collectively, whether it needed further discovery, or whether only certain subcategories should receive

notice. *Id.* at 443 ("The bottom line is that the district court has broad, litigation-management discretion . . . .").

Defendant does not dispute the similarities in this case but argues that the variations in Defendant's reimbursement formulas will require individualized inquiries into, among other factors, the store at which each driver worked, the hourly wage rate and amount of tips for each driver, the amount of reimbursement received, and each driver's actual expenses. The court disagrees that these differences prevent collective consideration of whether they were under-reimbursed for vehicle expenses. *Cf. Loy v. Rehab Synergies, L.L.C.*, 71 F. 4th 329, 339 (5th Cir. 2023) (finding that the merits issue of whether the company had knowledge that the plaintiffs were working overtime could be answered collectively despite the evidence that the plaintiffs "worked in five different positions at 20 different facilities, reported to 22 different directors during the relevant period, and [had] differing interactions with their directors regarding productivity requirements and off-the-clock work"). Even with the differences that Defendant notes here, the delivery drivers were reimbursed for vehicle expenses based on a per-mile reimbursement rate of about $.30, regardless of which of the formulas Defendant used.

As discussed above, in all but one of its stores, Defendant used the same payment formula—a tip-credit hourly wage multiplied by hours worked delivering pizzas plus a trip charge multiplied by the number of deliveries made. *See* Vera's Dep. at 50–51; Pl.'s Dep. at 23, 39, 43. At the remaining store, the vehicle expenses were reimbursed at a per-mile rate instead of a trip charge. *See* Veras's Dep. at 71–72. The difference between the two reimbursement formulas as it relates to Plaintiff's claim is that, for the tip charge, Veras calculated an average mileage per

11

delivery based on the generally consistent size of the trade areas whereas the store paying the per-mile reimbursement tracked the drivers' actual mileage. As discussed above, Veras's deposition testimony shows that both formulas for reimbursement utilized a per-mile reimbursement rate of approximately $.30. *See* ECF No. 1 at 3; Veras's Dep. at 73, 78–79.

The evidence before this court does not show the level of diversity among the proposed collective members such as to preclude deciding the merits collectively. Plaintiff here has shown that Defendant applied two formulas incorporating a $.30 per-mile reimbursement rate without consideration of actual expenses. Plaintiff has produced evidence showing that the proposed collective had the same job duties and similar pay formulas for reimbursement of vehicle costs. *Cf. Cotton-Thomas*, 2021 WL 2125003 at *2 (finding that the plaintiff "failed to proffer any evidence regarding the nature of the proposed class members' duties or departments, the purported class members' work settings, how often the members worked through their meal breaks, or the cause for the members' missed lunch breaks."); *Fuller v. Jumpstar Enters., LLC*, Civil Action No. H-20-1027, 2021 WL 5771935, at *4–7 (S.D. Tex. Dec. 6, 2021) (finding that, although there were "some common aspects" among the proposed collective, differences in overtime, hours worked, communication with dispatch, route length and difficulty, and identity of the employer precluded certification). Unlike the plaintiff in each of the above-cited cases, Plaintiff has shown that the delivery drivers shared job titles and duties and were all subject to a uniform policy. Even considering the differences in reimbursement rates, the trial will not require so many individualized considerations that it will be unmanageable. The

limited number of formulas that are all based on similar per-mile reimbursement rates will not result in an unmanageable trial of individual inquiries.

Defendant disagrees, arguing that the question whether Plaintiff and the potential collective members "were paid minimum wage for all hours worked in a particular workweek requires an individualized analysis of each driver's personal circumstances[.]" ECF No. 35 at 2. Defendant lists the following factors as requiring an individualized analysis: (1) whether the driver entered into an arbitration agreement; (2) the amount of tips received and reported; (3) the hourly wage and amount paid for in-store and delivery work; (4) the store and its trade area; (5) the amount of the trip charge or mileage reimbursement paid; (6) the vehicle expenses incurred by each driver; and (7) whether the amount reimbursed was sufficient for the driver's actual expenses. ECF No. 35 at 20.

Regarding arbitration, the court may not send notice of an FLSA action to any employee with a valid arbitration agreement that would prohibit the employee from participating in the action. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019). However, the employer has the burden of showing that a valid arbitration agreement exists. *Id.* at 502–03. Defendant concedes that Plaintiff did not enter into an arbitration agreement but surmises that "some in the putative class may have executed one" based only on Veras's mention at his deposition that an arbitration agreement may have been in the handbook or otherwise would have been given to all employees. ECF No. 35 at 19 & n.5; *see also* Veras's Dep. at 40–41. That is not enough. Veras stopped short of saying that delivery drivers were required to enter arbitration agreements, much less that any delivery driver did so. *See* Veras's Dep. at 40–41. Moreover, Defendant did

13

not provide a copy of the arbitration agreement for the court to review. The court thus has no way of determining whether the arbitration agreement was valid and binding or whether it would prohibit participation in this FLSA action.

Regarding tips and the hourly wage, neither the amount of tips received and reported nor the in-store hourly wage figures into the merits analysis in this case. Plaintiff is not challenging Defendant's payment of a tip-credit hourly wage for the hours driving. *See Garcia-Alvarez*, 2022 WL 2119542, at *8 ("The similarly situated analysis focuses upon the features of which make the particular policy or practice unlawful."). Moreover, any in-store work performed by the drivers, regardless of the hourly wage paid, does not affect whether they were properly reimbursed for vehicle expenses while clocked in as delivery drivers. *Cf. Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 232 (5th Cir. 2011) (quoting 29 C.F.R. § 531.56(e)) (stating that, when an employee works two different positions, the employer cannot take a tip-credit for work in a nontipped position).

Regarding the store and its trade area, they matter only in determining the applicable formula and the amount of the trip charge. The tip charge and mileage reimbursement do matter, but, as discussed above, the limited variations do not make the merits analysis unmanageable in this case. To the extent that the court must calculate damages on an individualized basis, that does not preclude class certification. *Paschal v. Perry's Rests., Ltd.*, Civil Action No. 1:22-CV-00027-RP, 2023 WL 2784864, at *6 (W.D. Tex. Apr. 4, 2023). Regarding actual expenses, the merits question in this case, as discussed above, is whether Defendant used a reasonable approximation of actual expenses. The court also notes that employers not employees are responsible for keeping and preserving "records of the persons employed by him

14

and the wages, hours, and other conditions and practices of employment maintained by him[.]" 29 U.S.C. § 211(c).

Defendant urges the court to follow two post-*Swales* district court opinions that denied certification of groups of delivery drivers as not similarly situated. ECF No. 35 at 8–12 (discussing *Eshelman v. MPFP*, LLC, Civil Action No. 4:20-cv-3119, 2022 WL 2655821 (S.D. Tex. June 22, 2022); *Eltayeb v. Deli Mgmt., Inc.*, Civil Action No. 4:20-CV-00385, 2021 WL 5907781 (E.D. Tex. Dec. 14, 2021)). The court has considered the cases and concludes that the above analysis compels a different result in this case.

### 4. Conclusion

For the reasons explained above, the court recommends that Plaintiff's motion to certify a collective be **GRANTED**. Plaintiff's proposed collective is limited to delivery drivers who worked for Defendant in the past three years. Because the evidence is limited to the nineteen stores in the Dallas area where drivers were reimbursed according to one of two formulas, the court narrows certification to a collective that includes only delivery drivers who worked at any of Defendant's nineteen stores in the Dallas Metroplex and were reimbursed for vehicle expenses related to their use of personal vehicles for Defendant's business. Notice should be sent to the following:

> All employees who worked as delivery drivers at any of the nineteen ITL Foods, LP's Pizza Hut franchises in the Dallas Metroplex area at any time since February 2, 2019, and were paid a vehicle expense reimbursement for using their own vehicles for deliveries.

The court orders the parties to confer about the content of the notice and submit a proposed notice to the court within seven days.

15

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on July 24, 2023.

Peter Bray
United States Magistrate Judge